## JOHNSON v. HILLYER, EDWARDS, FULLER, Inc.*

### No. 4392.

Court of Appeal of Louisiana.
Second Circuit.

*Rehearing denied March 10, 1933.

Julius T. Long, of Shreveport, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

### TALIAFERRO, J.

This is a suit to recover compensation. Plaintiff's petition declares that on or about March 30, 1931, while in the employ of defendant and engaged in the construction of a tramroad for it, about 24 miles from Glenmora in Rapides parish, and when trying to lift a heavy timber, a severe pain struck him in his lower abdomen, and as a result of said lifting, the muscles, ligaments, nerves, blood vessels and tissues in his lower abdomen and in the scrotum and testicles were seriously and permanently broken, injured, and impaired; that as a natural result of said injuries he was ruptured, and hernias were produced on both sides of his abdomen. He avers that said injuries have totally and permanently disabled him to do work of any reasonable character; that the services he was performing when injured arose out of his employment by defendant; that soon after he was injured defendant knew the nature, cause, time, and extent thereof; that defendant has refused to pay him compensation, though amicable demand therefor had been made.

Prior to answering, defendant filed a plea of prescription of six months provided in section 11 of the Compensation law (Act No. 20 of 1914, § 11, as amended by Act No. 247 of 1920), and alleges that prior to March 8, 1932, when this suit was filed, no notice had ever been given it as required by said law; and that the posting of notices on its premises by defendant, as required by said statute, had been done. This plea was tried and overruled. We presume it has been abandoned, as defendant does not make mention of it in briefs.

In its answer, defendant denies that plaintiff was injured while in its employ, but admits amicable demand upon it for compensation as alleged by plaintiff; and, after denying categorically and specifically the articles of plaintiff's petition describing the nature, extent, and time of the alleged injuries, avers that:

"The condition of which he complains is an old condition, which has existed for some months and years, and which is in no manner caused by or connected with any accidental injuries sustained by plaintiff arising out of or in the course of his employment with respondent company."

Defendant further avers that during the time plaintiff has been thus afflicted, and at time of filing said answer, his condition was such that he could perform reasonable manual labor.

The lower court rejected plaintiff's demand and dismissed his suit. He has appealed.

In the court below plaintiff objected to the admission of evidence tendered by defendant to prove that he was not suffering from hernia the day following that on which he claims to have been injured, nor since that time. The objection was overruled, and the testimony admitted. The objection is renewed in this court. Plaintiff contends that by the allegations of its answer, quoted above, defendant has admitted that plaintiff has hernia, and that these allegations cannot be contradicted by evidence on its part; and that if such evidence were admitted then plaintiff should have been allowed in rebuttal to offer evidence to contradict it.

Defendant only admits that the true condition of which plaintiff complains is an old condition. This does not necessarily involve the admission that plaintiff's condition is caused by or contributed to by hernia. He has a physical ailment. That is conceded. That is the condition to which defendant alludes in its answer. Plaintiff says that hernia resulting from a strain has caused the condition, while defendant denies this in toto, and avers that the condition has been brought about by a hydrocele of many years' existence, and by that alone. Beyond this, defendant flatly and categorically denied the articles of plaintiff's petition wherein the details of the injuries of which he claims to be suffering from are set out. Considering the answer as a whole, it is clear that there was no intention to admit that plaintiff has ever had hernia. The rulings of the trial judge on this question are correct.

Plaintiff plants himself squarely upon his allegations that he received an injury on March 30, 1931, which superinduced the serious trouble with which he was afflicted when he instituted this suit. He does not concede that he was affected with a hydrocele prior to and on date he claims to have been injured. Therefore, we are not confronted with an alternative contention that the injury of March 30, 1931, caused a latent, inactive disease to become active, superinducing the present condition of which he complains.

The evidence in the case is virtually conclusive that plaintiff had been afflicted with hydrocele many years prior to his alleged injury. Hydrocele is brought about by fluid gradually accumulating in the scrotum. It is progressive in character, and, unless relieved by operation, will attain large proportions and become very inconvenient to carry.

It may be congenital. Its causes are oft-times difficult to determine.

Plaintiff and his wife deny that he had any trouble involving his testicles prior to the alleged injury. In this they are corroborated by four lay witnesses who had known plaintiff for many years; some for life. They are all positive plaintiff was physically sound prior to March 30, 1931.

Defendant introduced six lay witnesses, all of whom had known plaintiff practically all his life, including his stepfather and some cousins; and these all testify positively that plaintiff has had hydrocele for many years.

A short time prior to the date of the alleged injury to plaintiff the defendant adopted a rule requiring all of its employees to submit to a physical examination by its physicians. The company desired to know their physical condition for its records. Plaintiff had knowledge of this requirement and was notified to report for examination, and was further advised that those who did not comply with this rule would not be given work. Plaintiff positively denies this, but the proof is overwhelmingly against him. He reported for work on Monday following this notice, without authority from defendant, and on that day he claims to have been injured.

Mr. C. A. Johnson, member of the school board of Rapides parish, who was foreman of one of defendant's poling crews, in March, 1931, testified that he informed plaintiff of the necessity of the examination, and that plaintiff stated to him that he was afraid he would not pass on account of the condition of his testicles; that about a year prior to this occasion plaintiff showed him his testicles, and that he (the witness) proposed to seek contributions to pay for an operation to relieve this condition; but plaintiff declined to agree.

Mr. McManus, who worked in said poling crew of defendant, discussed with plaintiff the company's rule about the examination, and plaintiff told him he would not be examined, because there was no use in him doing so as he could not pass. This witness also stated that about a year before this time plaintiff complained to him that the work he was doing was too heavy for him, and then and there exposed his testicles to view, and that the right one was near the size of a teacup; that thereafter plaintiff was given a job as ox driver but, being cruel to the oxen, he was transferred back to the poling crew. This witness' evidence is corroborated by that given by C. O. Blackman, defendant's wood superintendent.

Plaintiff went to see Dr. Bremer, company physician for defendant, the morning after he claims to have been hurt. The doctor examined him, and found a hydrocele of the right testicle, of considerable size; a smaller one about the left testicle; and found both inguinal rings intact. He examined plaintiff, and found no evidence of trauma or hernia. He was positive this condition could not have come about since the day before. He examined plaintiff the day of trial and found the right testicle to be twice the size it was when he examined it previously. He found no evidence of hernia on this examination.

As is usual, the medical experts who testified in the case contradict each other on material points. Dr. Packer, on behalf of plaintiff, examined him three or four months before the trial, again six weeks later, and again on the day of trial. His examinations revealed a right-sided omental hernia with hydrocele. He also found on each examination that plaintiff had hydrocele; that the inguinal ring was slightly dilated, allowing the passage of omentum into the scrotum, which produced hernia. The hydrocele had grown larger since the first examination. He stated that this hydrocele could have been of long standing. He also thought a strain would produce hernia.

Dr. G. W. Smith, a general practitioner, on behalf of plaintiff, in the main, corroborated the testimony of Dr. Packer. He only examined plaintiff on the morning of trial.

Dr. Bremer, witness for defendant, has had considerable experience in treating hydroceles. It was his opinion that hydrocele could not be caused by straining. He found no evidence of inguinal hernia at all. When he examined plaintiff the first time (the day after alleged injury), the inguinal ring was normal, but slightly enlarged the day of trial. He flatly contradicted Dr. Packer as to the existence of hernia. He knew of several men afflicted by hydrocele, and some with inguinal hernia, who performed manual labor.

Dr. P. K. Rand, a witness for defendant, corroborated the testimony of Dr. Bremer. He examined plaintiff on March 23, 1932. His findings may best be understood from his own evidence, which we quote:

"Q. Please state to the Court the kind of examination you made and what your findings were? A. The examination was restricted to the inguinal region and the external genitalia. He had a bilateral hydrocele, much larger on the right side than on the left. The right hydrocele was about six inches long and three inches in diameter; the one on the left probably half as large. The rings, the inguinal rings, were intact. He was placed in a perfectly dark room and with a small electric light the scrotum and its contents were examined by transillumination, showing that the entire contents on the right side consisted of the bag of fluid; on the left side, this bag of fluid was also apparent; but not as great as on the right.

"Q. This inguinal gland you refer to as

being intact, I mean, the canal, the rings are those the rings through which an inguinal hernia pass through to the scrotum, if it gets there? A. Yes, sir.

"Q. You think the position of those rings being intact, that there could be any omentum in this man's scrotum at the present time? A. No, sir, I do not.

"Q. In examining him with this light, could you see any evidence of any body, such as omentum or otherwise, that had descended into that testicle? A. If it was of any appreciable size it would show up the hernia; the contents of the hernia do not appear in the sack with the hydrocele; they would be by it but not in it.

"Q. Well, on last March when you examined this man in your opinion, did he have any hernia? A. No, sir.

"Q. Did you find any evidence of any hernia whatsoever? A. No, sir.

"Q. In your opinion, what was the only thing the matter with the scrotum at that time? A. He had a bilateral hydrocele."

Dr. Rand also examined plaintiff along with Drs. Packer and Bremer while the case was on trial. He stated the conditions then to be the same as when he previously examined him, save the hydroceles had grown larger. He was positive in his opinion that a hydrocele could not be caused by strain or trauma.

■ Whatever else may be said of the medical expert testimony, it certainly establishes the fact that a hydrocele does not come into existence suddenly, but is of slow growth; that it is not caused from strain or trauma; and we think the superior weight of this evidence preponderates in favor of defendant's contention that plaintiff has no inguinal hernia.

It devolved upon plaintiff to establish the existence of the hernia and that it developed from, and as a result of, an injury to him while discharging the duties of his employment with defendant. He has not met this requirement.

The sincerity of plaintiff's contentions and of his testimony is materially discounted when we consider and weigh all the evidence in the case. He unquestionably falsified when he testified he had not been notified and requested to submit to physical examination by defendant's physician. His reason for objecting to this examination was obvious. He had hydroceles, and knew it. Notwithstanding all this, he reported for duty the following Monday morning, and when he and three other men were preparing to lift a gum pole, not over nine feet long, ten inches in diameter at butt end, and seven inches at top, plaintiff, before his colaborers were in action, gave a quick jerk, as if to lift the pole by himself, and then declared he was hurt. He feared, if examined, he would lose his job, and the record strongly indicates his desire and purpose to forestall this possibility.

The learned district judge was of the opinion that plaintiff should not recover. We agree with him.

The judgment is therefore affirmed.